UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
JESUS SOTO,                                                              **COMPLAINT**,

                                      Plaintiff,            **JURY TRIAL DEMANDED**


                    -against-


THE CITY OF NEW YORK,
NYPD COMMISSIONER DERMOT SHEA, sued in his official capacity only,
UNDER COVER # 376 OF NARCOTICS BUREAU MANHATTAN SOUTH (NBMS),
DETECTIVE JOSEPH FRANCO SHIELD # 07972, of NBMS,
DETECTIVE SEAN HAGGERTY SHIELD # 4923 of NBMS, and
DETECTIVE SEAN BROWN SHIELD # 24894 of NBMS,
sued in their capacity as individuals,
                                      Defendants.
--------------------------------------------------------------------------X

        Plaintiff JESUS SOTO, by his attorney, Fred Lichtmacher of The Law Office of Fred

Lichtmacher P.C., complaining of the defendants herein, respectfully alleges as follows:

    1.   This civil rights action arises from the violation of the plaintiff's constitutional rights by

the defendants, who subjected plaintiff to violation of his Fourth and Fourteenth Amendment

rights via a false arrest; malicious prosecution; and the denial of a fair trial in violation of the due

process clause of the Fourteenth Amendment.

    2.   The defendants at all times relevant were New York City police officers and state actors

acting under color of state law.

### JURISDICTION AND VENUE

    3.   Jurisdiction is founded upon the existence of a Federal Question.

    4.   This action arises under 42 U.S.C. §1983 and the Fourth Amendment as well as pursuant

to the due process clause of the Fourteenth Amendment to the United States Constitution.

5.   Subject matter jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1343 (a) (3 & 4).

6.   Pursuant to 28 U.S.C. §1391(a) (1) & (b) (2), venue is proper in the Southern District of New York because events forming the basis of this Complaint occurred in this District.

## **PARTIES**

*7.*  At all times relevant, Plaintiff Jesus Soto, was a resident of the City and State of New York.

8.   Upon information and belief, at all times hereinafter mentioned, the City of New York (hereinafter, NYC) was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.   Upon information and belief, that at all times hereinafter mentioned, NYC, its agents, servants and employees operated, maintained and controlled the New York City Police Department (hereinafter, the NYPD), including all the police officers thereof.

10. NYPD Commissioner DERMOT SHEA is the final decision maker for the NYPD.

11. At all times relevant, Defendants UNDER COVER (UC) # 376 of NBMS; Detective Joseph Franco Shield # 07972, of NBMS, Detective Sean Haggerty Shield # 4923 of NBMS, and Detective Sean Brown Shield # 24894 of NBMS, were all assigned to the NYPD's Narcotics Bureau Manhattan South.

12. All the individual defendants are sued in their capacity as individuals except for Commission Shea who is sued in his official capacity only.

13. This action is commenced within three years of when plaintiff's causes of action arose.

## **STATEMENT OF FACTS**

14. On July 9, 2017 at approximately 6:00 pm in the vicinity of 118 Avenue D on the lower

East Side of New York, the plaintiff was arrested by the defendants in the instant matter.

15. Mr. Soto was falsely reported by the defendants to have participated in a drug sale.

16. Defendants also falsely allege they witnessed Mr. Soto drop a quantity of narcotics on the ground in the vicinity of where he was standing.

17. Despite not having engaged in a drug sale, nor having dropped drugs on the ground (as the defendants falsely alleged), Mr. Soto was arrested.

18. On July 10, 2017 Mr. Soto was arraigned before, Judge Davidson on the false charges in AR3 which included B felonies.

19. Mr. Soto requested he be ROR'd on the false charges but the court set 8k/4K bail and the criminal case was adjourned until July 14, 2017 in Part N for the 180.80 date, during which time Mr Soto was unable to raise the money for bail and had to remain in jail on the false charges.

20. On July 14, 2017 the ADA offered Mr. Soto a plea bargain of a year in Riker's Island, on the false charges and Mr. Soto rejected said offer, but he was able to make bail and the case was adjourned to September 9, 2017 in Part N.

21. On September 18, 2017 Mr. Soto appeared in Court and was informed he had been indicted on the false charges on September 16, 2017, and the case was adjourned until October 17 in Part 22.

22. On October 17, 2017 Mr. Soto was again required to appear in Court and on that date he was offered a plea arrangement of 1 year with a requirement he waive his right to appeal.

23. Mr. Soto's case was adjourned for motion practice, with a return date set for a decision on the pending motions.

24. On January 30, 2018 Mr. Soto was again required to appear in Court and was offered a

split sentence of six months followed by probation.

25. At court on February 27, 2019 the case was adjourned for trial.

26. On April 10, 2018 with DA informing Soto through his attorney, that if he did not accept a plea he was facing several years in jail, Mr. Soto accepted a split sentence of six months in jail with five years probation to follow.

27. On June 12, 2018 Mr. Soto was formally sentenced pursuant to the plea agreement.

28. Mr. Soto spent 4 months on Riker's Island and was released on probation.

29. On May 25, 2021 Mr. Soto's conviction was vacated pursuant to motion of the District Attorney.

30. Upon information and belief, because Detective Joseph Franco has been accused of committing perjury on multiple occasions, District Attorney Cyrus Vance has moved to vacate approximately one hundred convictions he was involved in, including the instant matter in which Detective Franco participated in lies used to prosecute Mr. Soto.

31. Mr. Soto appeared in Court eight times, he spent four months in jail and he had to report to probation until the conviction on the false charges was vacated on May 25, 2021.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF THE FOURTH AMENDMENT AND 42 U.S.C.§ 1983 VIA FALSE ARREST[1]

32. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

33. The plaintiff's rights have been violated pursuant to the Fourth Amendment of the United

---

[1] While the statute of limitations has run for a False Arrest claim, we will be asking the Court to find that the statute was equitably tolled due to the officers' perjury.

States Constitution made applicable to the states by virtue of the Fourteenth Amendment and brought before this Court pursuant to 42 U.S.C. § 1983, due to his being falsely arrested by the defendants.

34. The plaintiff was confined by defendants; defendants intended to confine the plaintiff; plaintiff was conscious of his confinement; and the plaintiff did not consent to the confinement which was not otherwise privileged.

35. The defendants generated papers alleging false charges against the plaintiff alleging activities which they did not witness, and which did not occur.

36. As a direct consequence of defendants' actions, the plaintiff was deprived of rights, privileges and immunities pursuant to the Fourth Amendment as made applicable to the states via the Fourteenth Amendment of the United States Constitution and more particularly, his right to be free from arrest without probable cause.

37. Among other invasions of his privacy, offenses to his dignity and violations of his rights, the plaintiff was subjected to being handcuffed, searched, confined, insulted, humiliated, emotionally harmed and embarrassed and he was otherwise harmed.

38. By reason of the aforesaid, the plaintiff has been damaged and he is entitled to compensatory damages in a sum of not less than ONE HUNDRED THOUSAND ($100,000.00) DOLLARS and punitive damages in an amount to be determined at trial and plaintiff is entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.

**AS AND FOR AN SECOND CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**VIOLATION OF PLAINTIFF'S FOURTH**
**AND FOURTEENTH AMENDMENT RIGHTS**
**VIA DENIAL OF HIS RIGHT TO A FAIR TRIAL,**
**i.e., DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS**

39. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein

40. The plaintiff was denied his right to a fair trial i.e., he was subjected to a deprivation of liberty without due process in violation of the Fourth Amendment as well as pursuant to the due process clause of the Fourteenth Amendment by the individual defendants who created false information and provided that information to the District Attorney which was then used in his prosecution.

41. The defendants, consciously lied in generating their felony complaint.

42. Defendants' actions resulted in the plaintiff being arrested, handcuffed, being held in custody, being forced to appear in court, caused the plaintiff to endure fear of being sentenced to jail, they suffered, anxiety, he incurred pecuniary harms and he was otherwise harmed.

43. By reason of the aforesaid, the plaintiff has been damaged and he is entitled to compensatory damages in a sum not less than FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS and punitive damages in an amount to be determined at trial and plaintiff is entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.

**AS AND FOR A THIRD CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**PURSUANT TO 42 U.S.C. § 1983**
**VIOLATION OF PLAINTIFF'S**
**FOURTH AMENDMENT RIGHTS**
**<u>VIA MALICIOUS PROSECUTION</u>**

44. Plaintiff repeats the allegations contained in the prior paragraphs as if fully stated herein.

45. By reason of the forgoing, the individual defendants violated plaintiff's rights under the Fourth Amendment to the United States Constitution, as made applicable to the states by the Fourteenth Amendment, via a malicious prosecution.

46. Plaintiff was subjected to a malicious prosecution by the defendants who caused and continued his arrest and indictment, without probable cause, the arrest was effected with malice, evidenced by his arrest with fabricated probable cause, and the charges terminated in plaintiff's favor when the District Attorney caused his conviction to be vacated.

47. Plaintiff was charged with multiple crimes, including B felonies and he faced in excess of a decade in jail.

48. The indictment of the plaintiff was obtained without the ADA being aware of the bad faith misconduct of the defendant detectives.

49. Plaintiff's indictment was procured due to: false statements made by the defendants.

50. Defendants' actions resulted in the plaintiff being arrested, handcuffed, indicted, his having to spend approximately four months in jail, being forced to appear in court numerous times including for crimes–which could have resulted in him being incarcerated for over a decade of his adult life.

51. By reason of the aforesaid, the plaintiff has been damaged and is entitled to compensatory damages in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS, an award of punitive damages against the defendant detectives and an award of attorneys' fees is appropriate pursuant to 42 U.S.C. §1988.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**PURSUANT TO 42 U.S.C. § 1983**
**AGAINST DEFENDANT NEW YORK CITY**
**i.e., MONELL CLAIM**

52. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

53. Before and after the arrest of plaintiff, a custom and practice of lawlessness and

corruption pervaded NYPD narcotics operations.

54. This custom and practice was first exposed in January of 2008, when four officers from Brooklyn South Narcotics were arrested and charged with criminal offenses.

55. In June 2011, Sgt. William Eiseman pled guilty to fabricating narcotics charges and admitted to training young officers to do the same (Melissa Grace, *NYPD Sgt. William Eiseman Pleads Guilty to Lying Under Oath in Plea Deal*, N.Y. Daily News, June 27, 2011).

56. The on-going custom and practice in making unlawful and fraudulent narcotics arrests was confirmed in October of 2011 in sworn testimony by former NYPD officer Steven Anderson.

57. On May 29, 2013, P.O. Isaias Alicea was convicted of ten felony counts of filing a false document and one misdemeanor count of official misconduct after falsely claiming that he saw two men conducting a drug deal in West Harlem.

58. In August 2013 former NYPD officer Genaro Morales testified that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013).

59. In 2015, SDNY Judge Engelmeyer suppressed narcotics evidence because of Bronx P.O. Luis Rios' perjury (Josh Saul, *Lying Cop Costs NYPD Big-Time Bust*, N.Y. Post, May 27, 2015).

60. In early 2017, Detectives Sasha Cordoba and Kevin Desormeau were indicted in Queens for lying about the circumstances of narcotics arrests.

61. In October 2017, EDNY Judge Weinstein permitted a *Monell* claim to go forward in a case alleging perjury by narcotics officers, noting that "A reasonable jury may find that this practice is not isolated to a few 'bad' police officers, but is endemic, that NYPD officials are

aware this pattern exists and that they have failed to intervene and properly supervise." (*Cordero v. City of New York*, No. 15 CV 3436, 2017 WL 4685544, at *11 (E.D.N.Y. Oct. 17, 2017).)

62. Upon information and belief, because of the custom and practice of corruption and lawlessness by NYPD narcotics officers, approximately 400 criminal prosecutions had to be dismissed by the Queens County and Kings County District Attorney's Offices.

63. Upon information and belief because of the dishonesty of Defendant, Detective Joseph Franco herein, approximately one hundred convictions are being vacated.

64. As a direct result of this custom and practice, defendants in the instant matter felt free to and pressured to arrest the plaintiff in the instant matter without probable cause and to manufacture evidence against him.

65. Both before and after the arrest of the plaintiff herein, NYPD officers were subject to "productivity goals" (i.e., arrest quotas).

66. The existence of the aforesaid custom and practice may be inferred from:

☐ NYPD Operations Order 52, issued in October 2011, mandating that police officers be evaluated on their activity numbers (including number of arrests) and that officers be disciplined if their numbers are too low; and requiring that NYPD managers set "performance goals" for "proactive enforcement activities" including "self-initiated arrests";

☐ the directive issued in 2002 by Deputy Chief Michael Marino setting quotas for summonses and arrests (Sean Gardiner, *NYPD Chief Set "Goals" for Officers*, Wall St. J., Mar. 22, 2013);

☐ the 2006 admission by Deputy Commissioner Paul J. Browne that commanders are permitted to set "productivity goals" (Kareem Fahim, *Police in Brooklyn Used Illegal Ticket Quotas, Arbitrator Decides*, N.Y. Times, Jan. 20, 2006);

☐ the 2010 admission by Deputy Commissioner Paul J. Browne that police officers are provided with "productivity goals" (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

☐ the information provided by whistle-blower police officer Adrian Schoolcraft documenting the existence of arrest quotas (Rocco Parascandola, *NYPD Whistleblower Adrian Schoolcraft Files for Retirement*, N.Y. Daily News, Dec. 4, 2015);

☐ the information provided by whistle-blower police officer Adil Polanco that commanders relentlessly pressure police officers to make more arrests (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

☐ the information provided by whistle-blower police officer Craig Matthews that police are forced to adhere to an illegal quota system, and that he was retaliated against for protesting the quotas (Graham Rayman, *Craig Matthews, Police Officer, Has His Quota Lawsuit Reinstated by Federal Appeals Court*, Village Voice, Nov. 29, 2012);

☐ audiotapes secretly recorded at the 81st Precinct in 2010, in which precinct commanders threatened police officers about what would happen if they did not meet arrest quotas (Graham Rayman, *The NYPD Tapes: Inside Bed-Stuy's 81st Precinct*, Village Voice, May 4, 2010);

☐ testimony by P.O. Bryan Rothwell at his departmental trial in January 2014 that police officers in his unit in Brooklyn were required to make at least two arrests per month (Rocco Parascandola, *Brooklyn Cop Testifies That He Was Expected to Make Two Arrests, Issue 20 Summonses Each Month*, N.Y. Daily News, Mar. 6, 2014);

☐ the facts set forth in the Second Amended Complaint in the class-action *Floyd v. City of New York*, 08 Civ. 1034 (SAS), all of which are incorporated herein, including allegations that

NYPD's weekly CompStat meetings put pressure on police officers to engage in behaviors designed to make them appear "productive" (¶ 114); and that NYPD maintains a de facto quota system requiring a certain number of arrests per month, with police officers facing adverse employment consequences for not meeting the quotas (¶ 125);

☐ Judge Scheindlin's Opinion & Order in *Floyd* dated August 12, 2013, finding *inter alia* that NYPD officers experienced significant pressure to increase their stop-and-frisk activity (p. 64), that senior NYPD officials routinely pressured commanders to increase enforcement activity, and that the pressure was passed down to the rank and file (p. 67-71); and that police officers may suffer adverse employment consequences for not engaging in enough "proactive enforcement activities," including arrests (p. 80);

☐ the facts set forth in the Complaints in the class-action *Stinson v. City of New York*, 10 Civ. 2248 (RWS), all of which are incorporated herein, including allegations that quota pressure forced police officers to issue bogus summonses and conduct unlawful stop-and-frisks (Graham Rayman, *NYPD Quotas Leading to Civil Rights Violations, New Lawsuit Says* , Village Voice, June 7, 2010);

☐ the facts set forth in the Complaints in the class-action *Raymond v. City of New York*, 15 Civ. 6885 (LTS), all of which are incorporated herein, including allegations by the twelve police officer plaintiffs that quotas "absolutely exist," that the burden falls predominantly upon minority neighborhoods, and that police officers who do not meet quotas are punished and subjected to retaliation (*NYPD Still Enforces Illegal Quota System, Minority Officers Allege in Lawsuit*,

http://www.nbcnewyork.com/news/local/nypd-quotas-new-york-city-police-department-bill-bratton-edwin-raymond-370118201.html, Feb. 24, 2016);

☐ a full-page ad in the May 7, 2012 Daily News taken out by the Patrolmen's Benevolent Association, stating that in regard to quotas, "Don't Blame the Cop, Blame NYPD Management";

☐ testimony in August 2013 by former NYPD officer Genaro Morales that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale because of pressure to meet arrest quotas (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013);

☐ the revelation in April 2015 by Anthony Miranda, chairman of the National Latino Officers Association, that anti-crime officers on Staten Island and elsewhere were forced to play a "quota game" in which getting insufficient points for making arrests resulted in adverse employment consequences (Thomas Tracy, *NYPD Accused of Giving Points to Staten Island Cops for Making Arrests to Hit Quota*, N.Y. Daily News, Apr. 1, 2015);

☐ statements by NYPD Inspector General Philip Eure in April 2015 that NYPD would be evaluating officers based in part upon the number of arrests made (Rocco Parascandola, *NYPD Inspector General Philip Eure Calls for Upgrade of Cop Performance Reviews, Recommends Data-Driven Approach*, N.Y. Daily News, Apr. 21, 2015);

☐ allegations in January 2016 by P.O. Michael Birch that he was targeted by supervisors for not making enough arrests of minority young people (John Marzulli, *NYPD Cop Claims He Was Punished for Not Stopping Enough Black, Hispanic Teens in Subway*, N.Y. Daily News, Jan. 7, 2016);

☐ allegations in November 2016 by former P.O. Brendan Cronin that unrelenting pressure to meet arrest quotas drove him to drink (Stephen Rex Brown, *Former NYPD Cop Blames Arrest Quota Pressure for Drunken Shooting Frenzy That Nearly Killed a Man*, N.Y. Daily News, Nov. 25, 2016); and

☐ allegations in November 2016 by former P.O. Doreen Debattista that she got flak for not making enough arrests (Victoria Bekiempis, *Cop Slaps NYPD Supervisors With $5.5M Discrimination Suit After Allegedly Forcing Her Into Retirement Due To Gender, Age*, N.Y. Daily News, Nov. 23, 2016).

67. Upon information and belief, as a direct result of these quotas, defendants in the instant matter felt pressure to arrest the plaintiff herein without probable cause and to manufacture evidence against him.

68. The plaintiff's rights pursuant to the Fourth Amendment and Fourteenth Amendment's due process clause were violated due to NYC's *de facto* policy of establishing drug arrest quotas, of not training, supervising, and punishing officers who  who make arrests without probable cause in drug cases; who sign false criminal complaints against suspects in drug cases despite a lack of probable cause; and who contribute to maliciously persecuting suspects in drug cases despite not having probable cause to believe the people being arrested did in fact commit frimes involving drugs.

69. NYC's failure to train, supervise, and discipline when necessary members of the NYPD in the above entitled matters led directly to the violations of plaintiffs' constitutional rights.

70. The above delineated practices of the NYPD are so permanent and well settled as to constitute a custom or usage with the force of law.

71. These practices directly cause plaintiff's harms.

72. By reason of the aforesaid, the plaintiff has been damaged and he is entitled to compensatory damages in a sum of not less than $500,000.00 (FIVE HUNDRED THOUSAND DOLLARS and plaintiff is entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.

**WHEREFORE,** plaintiff respectfully request that judgment be entered as follows:

(A)     Declaratory relief finding that plaintiff's rights under the United States Constitution were violated;

(B)     Compensatory damages to be determined at trial in a sum not less than FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS;

(C)     By reason of the wanton, willful and malicious character of the conduct complained of herein, punitive damages against the individual defendants in amounts to be determined at trial;

(D)     An award to plaintiff of the costs and disbursements herein;

(E)     An award of attorneys' fees pursuant to  42 U.S.C. §1988; and

(F)     Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        June 22, 2021

_____/s/_____
Fred Lichtmacher
The Law Office of Fred Lichmacher P.C.
Attorney for Plaintiff
116 west 23rd Street Suite 500
New York, New York 10011
Tel. No. (212) 922-9066

-14-

To:     The City of New York
        NYC Corporation Counsel
        100 Church Street
        New York, New York 10007

        UC # 376 OF NARCOTICS BUREAU MANHATTAN SOUTH (NBMS),
        DETECTIVE JOSEPH FRANCO SHIELD # 07972, of NBMS,
        DETECTIVE SEAN HAGGERTY SHIELD # 4923 of NBMS, and
        DETECTIVE SEAN BROWN SHIELD # 24894 of NBMS,
        Narcotics Bureau Manhattan South c/o 1 Police Plaza
        New York, NY 10038